IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KDH DEFENSE SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-cv-00843 |
| | ) | |
| EAGLE INDUSTRIES UNLIMITED, INC., et al., | ) | |
| | ) | |
| Defendant. | ) | |

## JURY INSTRUCTIONS

### I.  General Instructions

Ladies and Gentlemen.

As you know, we are trying a case in which the plaintiff, KDH Defense

Systems, seeks to recover money damages from Eagle Industries.  KDH contends

it had a contract with Eagle for the production of ballistic vest inserts, which

contract included a total of 3,884 large-size units.  Eagle denies the existence of

such a contract, and contends instead that the contract only included 2,692 large-

size units.  Thus, the dispute is over whether the contract includes these 1,192 vest

inserts at issue.  It is your job to resolve the factual disputes in this case, and to

apply the law that I will give you to the facts that you find.  You are the finders of

fact in this case, not me, and nothing in these instructions should be taken by you

as indicating I have any opinion about any aspect of this case.

1

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your duty to follow the law as I give it to you and not as you think it is or might like it to be, because justice requires that people in the same situation have the same law applied to them. Even if you would like the law to be different, it is still your duty to apply the law as I give it to you.

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and these instructions, you must follow my instructions.

In this case you will be called upon to answer at least one issue, and possibly as many as nine issues. I will go over each issue with you and explain the law that applies. You should consider these instructions as a whole. Do not single out one instruction as stating the law, but consider the instructions as a whole.

On each issue, I will tell you which party has the burden of proof. On most of the issues, the burden of proof is on the plaintiff KDH. However, there are a few issues where the burden is on the defendant Eagle. The burden of proof on all

the issues is by a preponderance of the evidence.  If the party with the burden of proof should fail to establish any essential element by a preponderance of the evidence, you should find for the other party as to that issue.

"Establish by a preponderance of the evidence" means evidence which, as a whole, shows that the fact sought to be proved is more probable than not.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.  I may, from time to time, refer to the "greater weight of the evidence."  This has the same meaning as the "preponderance of the evidence."

**II.**     **The Issues**

**Background**

As we go through the issues in this case, I will tell you a great deal about contract law in North Carolina.  Before we begin with law specific to each issue, let's go over some of the background law concerning contracts.

First, a contract is simply an agreement to do or refrain from doing a particular thing.  To have a contract, there must be mutual agreement, that is, the

parties to the agreement must agree to the same material terms, and there must be consideration, that is, some sort of mutuality of promise or obligation.

Second, there is nothing particularly mysterious or confusing about entering into a contract; it is a common-sense transaction that people and companies enter into every day, and doesn't require magic words, lawyers, or any particular form. A contract can be written, but it doesn't have to be. Oral agreements can also be contracts.

Good faith and fair dealing is required of all parties to a contract. Each party to a contract has the duty to do everything that the contract presupposes that he will do to accomplish its purpose.

## Issue One: Existence of a Contract

The first issue reads: "Did KDH and Eagle enter into a contract for the purchase of ballistic vest panel inserts that included the 1,192 large-size units at issue?"

There is no dispute that at some point the parties entered into a binding and enforceable contract for body armor panels. I may also refer to these as ballistic vest panel inserts. The question for you is whether the contract was for inserts that included 3,884 large-size units or only 2,692 large-size units.

4

On this issue, the burden of proof is on KDH. This means that KDH must prove, by the greater weight of the evidence, two things: First, that KDH and Eagle mutually agreed to the same material terms for doing a particular thing—here, that KDH and Eagle mutually agreed that KDH would make and sell vest inserts, including 3,884 large-size units, and that Eagle would buy the units. Second, that the mutual agreement or mutual assent of the parties was supported by an adequate consideration.

Mutual assent occurs when an offer is communicated by one party to the other, and the other party accepts the offer.

An "offer" is an outward expression of an intent to do a particular thing in exchange for the performance or non-performance of a particular thing by another party. There is no requirement that the offer be made in any particular form. It may be made orally, in writing, or by conduct which reasonably indicates the offering party's intention to be bound if the other party accepts.

An "acceptance" is an expression of assent or agreement to the offer. If the offer does not specify a particular method, manner, or form of acceptance, acceptance can be made in any manner and by any medium reasonable under the circumstances. Acceptance may be oral, in writing, or by conduct which reasonably signifies that the accepting party assents to each material term of the offer.

5

Mutual assent must be determined from the written words, verbal expressions, and conduct of the parties. Each party's written words, verbal expressions, and conduct must have such meaning as a reasonable person would give under the same or similar circumstances. In determining what meaning a reasonable person would give to the parties' written words, verbal expressions, and conduct, you should consider the evidence as to all the circumstances existing at the time of the offer and/or acceptance. In deciding whether there was mutual assent, you may consider whether the parties intended that there was no agreement unless it was in writing, but the law does not require a writing for there to be an agreement or mutual assent.

For a contract to be complete, each party must assent to all material terms. A material term is one that is essential to the transaction, that is, a term which, if omitted or modified, would cause one of the parties to withhold assent or to bargain for a substantially different term. However, not every detail of the parties' transaction need be agreed upon. It is sufficient that there be mutual assent, express or implied, to all of the material terms. What constitutes the material terms essential to a given contract depends on the facts and circumstances of each transaction. In determining the material terms, you may consider the following factors: the subject matter and purpose of the proposed contract; the intentions of the parties; the anticipated scope of performance by each party; any custom,

practice, or usage so commonly known to other reasonable persons, in similar situations, that the parties know or should have known of its existence; the written or verbal expressions of the parties; and the parties' past history of dealing with each other.

Mutual assent cannot be found if both parties contemplate that something remains to be done to establish a contract. However, the parties may agree to impose any condition precedent, which is a requirement that some act or event occur or not occur before a party to a contract becomes obligated to perform. A condition precedent may be written, oral, or implied from the circumstances. These conditions precedent are not unusual, and, if mutually agreed to, are simply part of the contract. They cannot be one-sided, however; both parties have to agree.

As I mentioned, the agreement of the parties must be supported by consideration. Consideration simply means something of value. Such value may consist of some right, interest, profit, or benefit accruing to one party or some forbearance, burden, detriment, loss, or responsibility given, suffered, or undertaken by the other.

A corporation may act only through natural persons who are its agents or employees. Generally, any agents or employees of a corporation may bind the

7

corporation by their acts and declarations made while acting within the scope of their actual or apparent authority. Actual authority is where the principal has actually authorized the agent to act on the principal's behalf with respect to a particular matter. Apparent authority is the authority which the principal has held the agent out as possessing, or which the principal has permitted the agent to hold himself out as possessing. The scope of the agent's apparent authority will be governed by what authority the third person, in the exercise of reasonable care, was justified in believing that the principal had conferred upon his agent.

In this case, KDH contends and Eagle denies that the contract the two parties entered into for the sale of these vest inserts included the 1,192 large-size units at issue.

So on this first issue, as to which KDH has the burden of proof, if you find by a preponderance of the evidence that KDH and Eagle entered into a contract for ballistics armor units that included 3,884 large-size units, then it would be your duty to answer this issue "Yes" in favor of KDH.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Eagle.

If you answer "Yes" to this issue, answer Issue 2. If you answer "No" to this issue, stop.

## Issue Two: Statute of Frauds – "Specially Manufactured Goods" Exception

The second issue reads: "Were the ballistic vest panel inserts specially manufactured goods, the production of which was substantially begun before repudiation by Eagle?"

You will answer this issue only if you have answered Issue 1 "Yes" in favor of KDH.

While the law does not require that all contracts be in writing, there are some circumstances where oral contracts cannot be enforced in the absence of some sort of writing. This requirement for some sort of written evidence of an agreement is often called the statute of frauds. This same law does provide that oral contracts for the sale of goods over $500 are only enforceable if specially manufactured goods are at issue. In other words, you can have an oral contract for the sale of goods, but the law will not enforce it unless specially manufactured goods are at issue. This is an exception to the statute of frauds.

Because it is undisputed that the goods at issue here were over $500, KDH must meet the "specially manufactured goods" exception to the statute of frauds.

On this issue, the burden of proof is on KDH. This means that KDH must prove, by a preponderance of the evidence, that:

(1) The parties had an oral contract for the production of the ballistic vest inserts; if you answered Issue One "Yes," then you have found this element.

9

(2) That these vest inserts were specially manufactured for Eagle.

(3) That the vest inserts could not be sold by KDH to another buyer in the ordinary course of its business.

(4) That KDH made a substantial beginning of the manufacture of the entire order of inserts. A substantial beginning occurred if: (a) the materials were changed to a substantial degree so as to reasonably indicate that they were for Eagle; and (b) KDH would have suffered an economic hardship if performance were stopped when the repudiation was received. However, merely preparing for production does not constitute a substantial beginning.

(5) And that this substantial beginning of manufacture occurred before KDH received notice of Eagle's repudiation of the oral agreement. In this context, a "repudiation" occurs when the buyer clearly informs the seller that it will not comply with the terms of the original agreement, or otherwise informs the seller it will not buy the disputed goods.

In this case, KDH contends and Eagle denies that KDH substantially began the special manufacture for Eagle of the total number of vest inserts before receiving notice of Eagle's repudiation of an oral agreement for those inserts.

Finally, as to this second issue, on which KDH has the burden of proof, if you find by a preponderance of the evidence that the parties had an oral contract that included the production of the 1,192 large-size vest inserts at issue; that these

10

inserts were specially manufactured for Eagle; that the inserts could not be sold by KDH to another buyer in the ordinary course of its business; that KDH made a substantial beginning of the manufacture of the entire order of inserts agreed to by the parties; and that this substantial beginning of manufacture occurred before KDH received notice of repudiation of the oral agreement by Eagle, then you would answer "Yes" in the corresponding space on the verdict form.

If, on the other hand, you fail to so find, then you would answer "No" in the space provided.

If you answer "Yes" to this issue, answer Issue 3. If you answer "No" to this issue, stop.


## Issue Three: Contract Modification

The third issue reads: "Did KDH and Eagle modify the quantity term of the contract from a total of 3,884 large body armor panels to a total of 2,692 large body armor panels?"

You will answer this issue only if you have answered Issues 1 and 2 "Yes" in favor of KDH.

On this issue, the burden of proof is on Eagle. This means that Eagle must prove, by the greater weight of the evidence, that KDH and Eagle mutually assented to a modification of their contract. Just like the parties can enter into a contract, the

11

parties can mutually agree to change the terms of that contract; this essentially forms a new contract and the same legal requirements are in place to modify a contract as are in place to enter into a contract. The parties must mutually agree before this modification becomes binding or enforceable. Mutual assent to modify a contract is determined from the written words and conduct of the parties that are positive, unequivocal, and inconsistent with the original terms of the contract. Each party's written words and conduct are to be given such meaning as a reasonable person would give under the same or similar circumstances. In determining what meaning a reasonable person would give to the parties' written words and conduct, you should consider the evidence as to all the circumstances existing at the time of the alleged modification. If one party positively and unequivocally repudiates or changes a term in a contract and the other party positively and unequivocally consents to or acquiesces in such repudiation or change, the parties have mutually assented to a modification of the contract.

In this case, Eagle contends and KDH denies that the parties modified the quantity term of the contract from 3,884 large body armor panels to 2,692 large body armor panels.

Finally, as to this third issue, on which Eagle has the burden of proof, if you find by the greater weight of the evidence that KDH and Eagle modified the term of their contract concerning the number of large-sized panel inserts, then it would be

12

your duty to answer this issue "Yes" in favor of Eagle.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of KDH.

If you answer "Yes" to this issue, stop. If you answer "No" to this issue, answer Issue 4.


**Issue Four: Breach – Non-Performance**

The fourth issue reads: "Did Eagle breach the contract by nonperformance?"

You will answer this issue only if you have answered Issues 1 and 2 "Yes" and Issue 3 "No" in favor of KDH. In other words, if you determine that the parties entered into a contract which included 3,884 large-size inserts, and that the contract wasn't modified, then you must next consider whether Eagle committed a breach of one or more material terms of the parties' contract.

On this issue, the burden of proof is on KDH. This means that KDH must prove, by the greater weight of the evidence, two things:

First, that the time had come for Eagle to perform a material term of the contract. This means that, at the time of the alleged breach, KDH and Eagle were to perform their respective obligations at the same time and KDH was ready, willing, and able to perform its obligations; and either there were no conditions precedent to Eagle's obligation to perform or that each condition precedent to

13

Eagle's obligation to perform was satisfied. As we discussed earlier in talking about whether a contract has been made, a condition precedent is a requirement that some act or event occur or not occur before a party to a contract becomes obligated to perform. A condition precedent may be written, oral, or implied from the circumstances.

Second, that Eagle failed to perform a material term of the contract. A material term is one that is essential to the transaction, that is, a term which, if omitted or modified, would cause one of the parties to withhold assent or to bargain for a substantially different term.

In this case KDH contends, and Eagle denies, that KDH was ready, willing, and able to perform its obligations, that each condition precedent to Eagle's obligation to perform was satisfied, and that Eagle breached the contract by failing to purchase the 1,192 large-sized vest inserts at issue.

Finally, as to this fourth issue, on which KDH has the burden of proof, if you find by the greater weight of the evidence that Eagle breached the contract by non-performance, then it would be your duty to answer this issue "Yes" in favor of KDH.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Eagle.

If you answer "Yes" to this issue, answer Issue 5. If you answer "No" to

14

this issue, stop.

**Issue Five: Waiver of Breach of Contract**

The fifth issue reads: "Did KDH waive Eagle's breach?"

You will answer this issue only if you have answered Issues 1, 2, and 4 "Yes" and Issue 3 "No" in favor of KDH.

On this issue, the burden of proof is on Eagle. This means that Eagle must prove, by the greater weight of the evidence, three things:

First, that Eagle's breach of the contract was not a total one, and, notwithstanding Eagle's breach, KDH continued to receive some of the consideration for which it bargained.

Second, that KDH was aware of the breach by Eagle.

And third, that KDH intentionally and voluntarily waived its right to suspend its own performance and declare a breach of contract by Eagle. A waiver may be communicated in writing or by conduct. If KDH continued to perform its obligations under the contract or accepted partial, deficient, or non-conforming performance from Eagle without protest or reservation, you may infer, but you are not compelled to find, that KDH waived its right to hold Eagle responsible for its breach of contract. Again, there are no magic words that have to be used.

Eagle contends and KDH denies that KDH waived any breach when it

15

performed its obligations without objection or a reservation of rights.

Finally, as to this fifth issue, on which Eagle has the burden of proof, if you find, by the greater weight of the evidence, that KDH waived Eagle's breach of contract, then it would be your duty to answer this issue "Yes" in favor of Eagle.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of KDH.

If you answer "Yes" to this issue, stop. If you answer "No" to this issue, answer Issue 6.

## Damages for Breach of Contract

If you find that Eagle committed a breach of contract, you will also have to decide what amount of damages, if any, KDH is entitled to recover from Eagle as a result of such breach. If there is a breach of an enforceable contract, then KDH is entitled to recover nominal damages even without proof of actual damages. Nominal damages consist of some trivial amount, such as one dollar, in recognition of the technical damage resulting from the breach.

KDH may also be entitled to recover actual damages. On the issue of amount of damages, the burden of proof is on KDH. This means that KDH must prove, by the greater weight of the evidence, the amount of actual damages sustained, if any, as a result of the breach.

The issue of damages is broken into two categories. The first category, Issues 6, 7, and 8, concerns the 548 large-size inserts (out of the 1,192 at issue) that were spread and cut. Issue 6 is the amount of damages and KDH has the burden of proof. Issues 7 and 8 concern Eagle's claim that KDH failed to mitigate its damages as to the cut panels, and the burden of proof is on Eagle. The second category, Issue 9, concerns lost profit damages KDH claims for the panels it did not cut, and the burden of proof is again on KDH.

As to all the damages issues, a party injured by a breach of contract is entitled to be placed, insofar as this can be done by money, in the same position he would have occupied if there had been no breach of the contract.

KDH's damages are to be reasonably determined from the evidence presented. KDH is not required to prove with mathematical certainty the extent of the financial injury in order to recover damages. Thus, KDH should not be denied damages simply because they cannot be calculated with exactness or a high degree of mathematical certainty. However, an award of damages must be based on evidence which shows the amount of KDH's damages with reasonable certainty. You may not award any damages based upon mere speculation or conjecture.

We will turn first to the question of damages related to the 548 cut panels.


## Issue Six: Amount of Damages for the Cut Panels

The sixth issue reads: "What amount of money damages is KDH entitled to recover from Eagle for breach of contract related to the 548 panels that were spread and cut?"

You will answer this issue only if you have answered Issues 1, 2, and 4 "Yes" and Issues 3 and 5 "No" in favor of KDH.

On this issue, the burden of proof is on KDH. This means that KDH must prove by a preponderance of the evidence the amount of damages suffered as a result of Eagle's breach of contract. Generally, the law provides that where the buyer fails to pay the agreed price as it becomes due, and the goods are identified to the contract, and the seller is unable after reasonable effort to resell them at a reasonable price, then the seller may recover the agreed price.

KDH contends and Eagle denies that KDH is entitled to recover the contract price on each unit, less a small amount per unit for costs not incurred.

Finally, as to this sixth issue, on which KDH has the burden of proof, if you find by a preponderance of the evidence the amount of damages sustained by KDH by reason of Eagle's breach of contract, then it would be your duty to write that amount in the blank space provided. If, on the other hand, you fail to so find, then it would be your duty to write a nominal amount such as "One Dollar" in the blank space provided.

If you answer this question, regardless of your answer, answer Issue 7.

## Issue Seven: Failure to Mitigate

The seventh issue reads: "Is Eagle entitled to a credit against the damages owed to KDH as a result of KDH's failure to use ordinary care to mitigate the consequences of Eagle's breach?"

You will answer this issue only if you have answered Issue 6.

On this issue, the burden of proof is on Eagle. This means that Eagle must prove, by the greater weight of the evidence, two things:

First, that KDH failed to use ordinary care to mitigate the damages sustained by it as a result of Eagle's breach of contract. Upon the occurrence of a breach of contract, the law imposes upon the non-breaching party a duty to use ordinary care to minimize the damages resulting from such breach. Ordinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances to mitigate the adverse consequences of the breach. Once the breach of contract becomes definite and known to a party, he must take such steps as fair and reasonable business prudence would require to minimize the damage.

And second, that, as a result of KDH's failure to use ordinary care to mitigate, certain damages that KDH could have minimized were not minimized. The opportunity to mitigate damages must be a reasonable one. The non-breaching

19

party is not required to make more than a reasonable exertion or to undertake more than a reasonable expense.

The non-breaching party is not required to incur unreasonable expense in order to mitigate damages. It is only necessary that the non-breaching party acts with such care and diligence as a person of ordinary prudence would act under the circumstances, and his effort to mitigate damages are determined by the rules of common sense, good faith and fair dealing.

In this case, Eagle contends, and KDH denies, that KDH failed to use ordinary care to mitigate damages by not informing its production department of the reduced number of large panels in the Scenario 2 purchase order, and not instructing its production department to cease production when it received email confirmation from Eagle that the quantities in the Scenario 2 purchase order were reduced. Eagle further contends, and KDH denies, that, as a result of KDH's failure to use ordinary care, certain damages which KDH could have minimized were not minimized.

Finally, as to this seventh issue, on which Eagle has the burden of proof, if you find by the greater weight of the evidence that Eagle is entitled to a credit against the damages owed to KDH as a result of KDH's failure to use ordinary care to mitigate the consequences of Eagle's breach, then it would be your duty to answer this issue "Yes" in favor of Eagle.

20

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of KDH.

If you answer "Yes" to this issue, answer Issue 8.  If you answer "No" to this issue, skip Issue 8 and answer Issue 9.


## Issue Eight: Amount of Credit for Failure to Mitigate

The eighth issue reads: "What amount of the damages incurred by KDH could reasonably have been mitigated by KDH's use of ordinary care?"

You will answer this issue only if you have answered Issue 7 "Yes" in favor of Eagle.

On this issue, the burden of proof is on Eagle.  This means that Eagle must prove, by the greater weight of the evidence, the amount of the damages incurred by KDH which could reasonably have been mitigated had KDH used ordinary care.

Finally, as to this eighth issue, on which Eagle has the burden of proof, if you find by the greater weight of the evidence the amount of the damages incurred by KDH which could reasonably have been mitigated by KDH's use of ordinary care, then it would be your duty to answer this issue in favor of Eagle by writing that amount in the blank space provided.

21

If, on the other hand, you fail to so find, then it would be your duty to answer this issue in favor of KDH by writing "zero" or "none" or some trivial amount such as "One Dollar" in the blank space provided.

If you answer this question, regardless of your answer, answer Issue 9.


## Issue Nine: Amount of Damages for the Uncut Panels

The ninth issue reads: "What amount of money damages is KDH entitled to recover from Eagle for breach of contract for the 644 additional large body armor panels that KDH did not cut?"

You will answer this issue only if you have answered Issue 6.

On this issue, the burden of proof is on KDH to prove its damages by a preponderance of the evidence.

As I instructed you earlier, a party injured by a breach of contract is entitled to be placed, insofar as this can be done by money, in the same position he would have occupied if there had been no breach of the contract.

To recover lost profits for the panel inserts that were not cut, KDH must prove, by the greater weight of the evidence, the amount of damages sustained, if any, as a result of the breach.

The law provides that where the buyer has breached the contract of purchase, the seller may recover from the buyer the profit, including a reasonable

contribution to overhead the seller would have made from full performance by the buyer.

KDH's damages are to be reasonably determined from the evidence presented. Mathematical certainty is not required, but you may not award any damages based upon mere speculation or conjecture.

Finally, as to this ninth issue, KDH has the burden of proof, if you find by a preponderance of the evidence the amount of damages sustained by KDH by reason of Eagle's breach of contract, then it would be your duty to write that amount in the blank space provided.

If, on the other hand, you fail to so find, then it would be your duty to write a nominal amount such as "One Dollar" in the blank space provided.

### III.   Evidentiary Instructions

Now, in reaching your verdict, you will of course consider all of the evidence. This does not mean you have to believe all of the evidence, but you should give all of the evidence your consideration.

The evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to. Statements and arguments by the lawyers are not

evidence.  The lawyers are not witnesses.  What they have said in their opening

statement, closing arguments, and at other times is intended to help you understand

the evidence, but it is not evidence.  However, when the lawyers on both sides

stipulate or agree on the existence of a fact, unless otherwise instructed, you must

accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I

have ordered stricken must be entirely disregarded.

If a lawyer asks a witness a question containing an assertion of fact, you may

not consider the assertion as evidence of that fact.  The lawyer's questions and

statements are not evidence.

If you find that a party to the case made oral statements or admissions

outside of court, you should consider those statements with caution and weigh

them with care.   The person who made the statement or admission may not have

expressed clearly the meaning intended, or the witness testifying to an alleged

admission may have misunderstood or may have misquoted what was actually

said.

However, when an oral statement or admission made outside of court is

proved by reliable evidence, that statement or admission may be treated as

trustworthy and should be considered along with all other evidence in the case.

You are entitled to consider statements made outside the courtroom by a party for the truth of the matter. As to deposition testimony, which was made under oath, you need not give any special caution to those out of court statements.

There are two types of evidence from which you may find the truth as to the facts of a case—direct evidence and circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness; circumstantial evidence is proof of a chain or group of facts and circumstances pointing to the existence or non-existence of certain facts. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. The law simply requires the party having the burden of proof on a particular issue to satisfy the jury as to that issue by the greater weight of all the evidence in the case.

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence,

motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

26

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness's present testimony. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

You may use the notes taken by you during the trial. However, the notes should not be substituted for your memory. Remember, notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not on your notes. Nor should you give undue weight to the notes of another juror.

IV. **Concluding Instructions**

The verdict must represent the considered judgment of each of you. In order

to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case. I remind you that I have no opinion about any aspect of this case, and you should not draw any inference from any ruling I have made, expression on my face, or inflection in my voice that I have an view as to whether a particular witness should be believed, whether a party has proved its case, or as to what your verdict should be. Those issues are your responsibility, and you must render a verdict reflecting the truth as you find it.

Upon retiring to the jury room, you will select one of you to act as your foreperson. The foreperson will preside over your deliberations, and will be your spokesperson here in court.

You may take your copy of the verdict sheet into the jury room with you. In a moment we will send in the official verdict sheet, one that doesn't have "Copy" written on it. That is the verdict sheet on which you will write your answers.

Your foreperson will write the unanimous answer of the jury in the space provided opposite each question. You will follow the instructions on the verdict sheet as to which questions need to be answered, working your way through until either you answer Issue 9 or you reach an instruction that says Stop. When you have answered the issues, the foreperson will then date and sign the verdict form. Then knock on the door and tell the officer you have reached a verdict. We will bring you back in to the courtroom at that time.